N. & L. Fur Co., Inc., Appellant, *v.* George Petkanas and John Petkanas, Copartners, Doing Business as Petkanas Bros., Defendants.

George Petkanas, Respondent.

Order affirmed, with twenty dollars costs and disbursements, with leave to the plaintiff to serve an amended complaint alleging a cause of action at law within ten days after service of order upon payment of said costs, and the ten dollars costs of motion at Special Term. No opinion. Present — Martin, P. J., Townley, Untermyer, Cohn and Callahan, JJ.; Untermyer and Cohn, JJ., dissent and vote to reverse and deny the motion; dissenting opinion by Untermyer, J.

Untermyer, J. (dissenting). The question to be decided is whether the complaint sets forth a cause of action which entitles a court of equity to entertain jurisdiction.

The plaintiff is a furrier engaged in the sale of fur coats. The defendants are coat manufacturers who have developed the unique process in the manufacture of fur coats of assembling waste ends of fur skins, the salvage from large skins. There is in the fur industry a limited supply of waste ends, controlled by about ten concerns, of which the defendants control seventy-five per cent. The other nine concerns use their supply for their own retail business, and, therefore, the defendants are the only manufacturers from whom fur dealers in the trade are able to purchase such fur coats. Mindful of the advantage to the plaintiff in purchasing these coats from the defendants, it entered into a written contract on March 2, 1937, whereby the defendants agreed to sell to the plaintiff, and the

plaintiff agreed to purchase at stipulated prices, until January 31, 1938, the defendants' entire output of these fur coats. The defendants further agreed to turn over to the plaintiff any orders which they might receive from any source for such coats, and, particularly, to refrain from selling, giving away or delivering to any person, association or corporation other than the plaintiff any of these coats, or pieces of skins from which they are made, during the term of the contract.

Then follow allegations of the performance of the contract until June 20, 1937, when it was breached by the defendants' refusal to sell to the plaintiff and the sale of such coats to other dealers who are the plaintiff's competitors. Consequently the plaintiff is now unable to obtain from the defendants or elsewhere fur coats made from salvage and will be unable to compete with those firms to whom the defendants are now selling the coats. It is alleged that the damages which will result from the defendants' breach will not furnish an adequate remedy at law and it is, therefore, demanded that the defendants be enjoined from selling these coats to others and be compelled to specifically perform their contract with the plaintiff.

I think the intervention of equity is necessary in such a situation. It is necessary because, under the circumstances alleged in the complaint, the plaintiff cannot procure elsewhere the coats which it is entitled to receive under the contract from the defendants. It is necessary particularly on account of the negative covenant contained in the contract by which the defendants agreed to abstain from the sale of these coats to others. According to the allegations of the complaint, the defendants have violated both these covenants. They have violated the covenant to sell coats to the plaintiff by their refusal to sell. They have violated the negative covenant by sales to others. The plaintiff will not be adequately compensated by damages on account of the defendants' refusal to sell to it, for it cannot with these damages purchase such coats elsewhere. (Pomeroy, Specific Performance of Contracts [3d ed.], § 15.) The remedy at law is likewise inadequate for the defendants' sale of coats to others, for the damages resulting from the breach of such a covenant are impossible of accurate computation. (Pomeroy, Specific Performance of Contracts [3d ed.], §§ 25, 34.) Upon both grounds a court of equity should retain jurisdiction to enforce the affirmative provisions of the contract by a decree of specific performance and to enjoin the negative covenant by injunction. (*Butterick Pub. Co.* v. *Loeser & Co.*, 232 N. Y. 86; *Standard Fashion Co.* v. *Siegel-Cooper Co.*, 157 id. 60; 4 Pomeroy, Equity Jurisprudence [4th ed.], § 1344 *et seq.*, § 1403 *et seq.;* Equitable Remedies, 292 *et seq.*) In no other way can the plaintiff obtain the full benefit of its contract.

The order should be reversed and the motion denied.

Cohn, J., concurs.